**Opinion filed January 21, 2010**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-07-00381-CR

_____

**ISABEL ESPINOZA, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 106th District Court**

**Dawson County, Texas**

**Trial Court Cause No. 06-6493**

**M E M O R A N D U M   O P I N I O N**

The jury convicted Isabel Espinoza of indecency with his granddaughter and assessed his punishment at confinement for ten years.[1]  We affirm.

Appellant contends that the evidence is both legally and factually insufficient to support the conviction.  Specifically, appellant argues that there "is simply no evidence from which the jury could convict appellant."

---

[1]In the same trial, appellant was convicted of the aggravated sexual assault of his step-grandson.  That conviction has been affirmed this same day in Cause No. 11-07-00382-CR.

In order to determine if the evidence is legally sufficient, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, the appellate court reviews all of the evidence in a neutral light. *Laster*, 275 S.W.3d at 519; *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414-15; *Johnson*, 23 S.W.3d at 10-11.

The record reflects that Bonnie Acosta was a counselor for the Lamesa Independent School District. Acosta testified that each victim told her about appellant's sexual advances and activity. Appellant's granddaughter told her that appellant had touched her on her breasts and in her crotch area and showed her the "hickeys" appellant had given her when he kissed her. The granddaughter stated that appellant usually touched her when her grandmother was at work.

Acosta stated that she met with the victim six times. Acosta testified that the victim never recanted her claim of sexual contact. After Acosta filed her report, the victim came to see her because the victim was upset that she would be placed in foster care.

Patricia Ann Salazar, a sexual assault nurse examiner with the pediatrics unit at Texas Tech Physicians, testified that she performed a sexual assault examination on the victim in this appeal. The victim told Salazar that appellant had told her that he was going to have "full sex" with both her and her female cousin when the girls turned twelve. The victim told Salazar that appellant had touched her "private." The victim did not mention anything about hickeys to her. Salazar found a "skin tag" at the base of the victim's hymen. While the skin tag was "abnormal" and a "suspicious finding" in light of the history, Salazar could not determine if the skin tag was from sexual abuse.

Appellant testified in his own behalf that he had never sexually abused either of the victims or any other child. Appellant stated that both victims were angry with him and had originally blamed

2

his son (the father of this victim in this appeal and the stepfather of the victim in Cause No. 11-07-00381-CR).

The victim in this appeal testified as a witness for appellant. She stated she was lying when she accused appellant of putting hickeys on her and touching her. She did not remember telling Salazar that appellant had touched her. She stated that she lied because she did not want her father (appellant's son) to marry the other victim's mother.

The appellate court reviews the factfinder's weighing of the evidence and cannot substitute its judgment for that of the factfinder. *Cain*, 958 S.W.2d at 407; *Clewis*; 922 S.W.2d at 133. Due deference must be given to the factfinder's determination, particularly concerning the weight and credibility of the evidence. *Johnson*, 23 S.W.3d at 9; *Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). This court has the authority to disagree with the factfinder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Johnson*, 23 S.W.3d at 9. While the verdict is afforded less deference under a factual sufficiency review, the appellate court is not free to override the verdict simply because the appellate court disagrees with it. *Laster*, 275 S.W.3d at 520.

Acosta and Salazar both testified that the victim reported inappropriate sexual behavior by appellant toward her. The very fact alone that the victim, who was appellant's granddaughter, recanted her outcries at appellant's trial does not establish insufficient evidence. As stated above, the jury was the sole judge of the witnesses' testimony and could believe all, some, or none of any witness's testimony. This court may not substitute its weighing of the credibility of the witnesses for the jury's.

When viewed in a neutral light, we find that the evidence supporting the verdict is not so weak that the verdict is clearly wrong and manifestly unjust and that the verdict is not against the great weight and preponderance of the conflicting evidence. Further, we find that, when viewed in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The evidence is both factually and legally sufficient to support the conviction. Appellant's second issue is overruled.

3

In his first issue on appeal, appellant contends that the trial court erred in admitting the testimony of his nephew who stated that appellant had sexually assaulted him. Appellant argues that evidence of this extraneous offense was not relevant to the present case and was too remote and that the issues of his identity and intent were not in issue. Because appellant testified that he never sexually assaulted the victim and because his defense at trial was that the victim had a motive to fabricate the assault, appellant argues that the trial court abused its discretion in admitting the testimony.

When appellant testified in his own behalf, he stated that he "used to drink a lot" and that he had a "few" DWIs from when he was younger. Appellant further stated that, at least to his knowledge, he did not think he had been convicted of a felony. He explained that he had turned himself in because he had heard that a policeman was looking for him.

On cross-examination, the State questioned appellant about his prior DWIs and asked him if he remembered "smacking around Joe Salas with a lug wrench, wounding him." When appellant stated that he did not know Joe, the State showed appellant a copy of the 1966 Dawson County judgment convicting him in Cause No. 7930 of the aggravated assault of Joe Salas with a lug wrench. Appellant explained that, while he was the same person convicted of the offense in the 1966 judgment, he never hit the man and that he was not guilty even though he had entered a guilty plea. Appellant stated that, in 1966, he had turned himself in because the authorities were looking for him. He also stated that he did not know if he had been convicted of the crime.

The State then questioned appellant concerning the offenses that appellant was presently on trial for and asked if he remembered threatening or touching either victim. When appellant continually denied touching or threatening either victim, the State asked if he remembered an occasion back in 1974 when he had sexually assaulted his nephew. Appellant's counsel immediately objected, and the trial court conducted a hearing outside the presence of the jury.

At the hearing, the nephew testified concerning inappropriate sexual touching by appellant. Counsel for appellant cross-examined him. The trial court explained its balancing of the probative value with the prejudicial effect of the testimony and concluded that the evidence was admissible to rebut appellant's defensive theory that both victims had fabricated their accusations and was relevant and probative to a material issue other than appellant's character. The trial court noted that

4

defense counsel had questioned the voir dire panel extensively concerning children fabricating stories. The trial court limited the admission of the testimony to the State's rebuttal evidence and stated that a limiting instruction would be given. When cross-examination of appellant continued in the presence of the jury, appellant denied sexually assaulting any child.

On redirect, appellant testified that he had not been arrested or accused of "any crime" since 1990 and that he did not remember any arrests or accusations from the 1980s. On recross, the State asked appellant if he remembered his 1986 and 1988 convictions. He also stated that he did not remember being placed in jail two years prior to this trial and that he was having a "little bit of a bad time recollecting" since he had had a stroke while he was in the jail in Brownfield. His trial counsel then had appellant explain his various medical problems, including impotence, high blood pressure, and a hiatal hernia.

After appellant rested his case, the State called three rebuttal witnesses, including appellant's nephew. Appellant's nephew testified that, when he was a child, he would play with appellant's children at appellant's home. When he was around ten years old, appellant began touching him. His nephew stated that he woke up when appellant was rubbing his penis. Appellant would expose himself and make his nephew touch him. His nephew stated that he was scared when these things happened. The first time, his nephew cried, and appellant told him to be quiet and not wake up appellant's wife. The second time, appellant covered his nephew's mouth and threatened to hurt his nephew's parents. The third time, appellant offered his nephew money not to say anything. Appellant's nephew testified that he did not go back to appellant's home after the third time and that he blocked out any memory of the incidences for years.

TEX. R. EVID. 404(b) provides that evidence of extraneous offenses are admissible only for purposes other than to prove that a person acted in conformity to his character. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991). Under Rule 404(b), such purposes include motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The Texas Court of Criminal Appeals has found that extraneous offenses are admissible to rebut a defensive theory of fabrication or retaliation. *Moses*, 105 S.W.3d at 627; *Wheeler v. State*, 67 S.W.3d 879, 887-88 (Tex. Crim. App. 2002).

The trial court's decision to admit evidence of an extraneous offense will not be disturbed on appeal absent an abuse of discretion. *Moses*, 105 S.W.3d at 627; *Montgomery*, 810 S.W.2d at 391. The appellate court is prohibited from conducting a de novo review of the record to make its own independent determination of the admissibility of the evidence. *Id*. Therefore, as long as the trial court's ruling is within the zone of reasonableness, the appellate court will affirm. *Id*.

We disagree with appellant that the trial court abused its discretion. We cannot say that the ruling to allow the nephew's testimony was outside the zone of reasonableness. Appellant's defense was that both victims were fabricating their accusations. We also disagree with appellant's argument that any remoteness of the extraneous offense automatically makes the testimony irrelevant under TEX. R. EVID. 401. The first issue is overruled.

The judgment of the trial court is affirmed.

PER CURIAM

January 21, 2010

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

6